IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC M. MISKOVITCH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06-1410 |
| | ) | |
| v. | ) | Judge Donetta W. Ambrose |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| LT. HOSTOFFER, et al., | ) | |
| | ) | Doc. No. 136 |
| Defendants | ) | |

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Motion for Summary filed by Defendants Walton, Cmar, Hostoffer, Lowther, Rosado, Hutchinson, Balya, Ceraso, Light and the Westmoreland County Jail (doc. no. 136) be granted except as to Plaintiff's claim of excessive force against Defendants Hostoffer, Rosado and Hutchinson.

**II.    REPORT**

On February 2, 2008, Plaintiff, Eric M. Miskovitch, filed a Second Amended Complaint against 22 Defendants raising allegations concerning incidents that allegedly occurred during his various periods of incarceration at SCI Graterford, the Westmoreland County Prison, Allegheny County Jail, and Mayview State Hospital. Defendants included the following: John R. Walton, Warden; Steve Cmar, Deputy Of Security; Lt. Hostoffer; Lt. Lowther; C. O. Rosado; and C.O. Hutchinson, all of whom were employees of the Westmoreland County Jail (WCJ) during the relevant time period; Tom Balya, Chairman of the WCJ; Thomas C. Ceraso and Phil Light, Commissioners for the WCJ; and the WCJ (hereinafter collectively referred together as the WCJ Defendants); Warden Ramon Rustin, Lt. Luis Leon, Major Donis, Captain Reese, C.O. Worrall,

C.O. Mazzocca, all of whom were employees of the Allegheny County Jail (ACJ) during the relevant time period; and the ACJ (hereinafter collectively referred together as the ACJ Defendants); Dr. Rodriguez, a physician who provided medical services to inmates at the ACJ during the relevant time period; Dr. Petras, a physician who provided medical services to persons confined at the Mayview State Hospital; Corrections Officer Keith, an employee of Mayview State Hospital (MSH); David Diguglielmo, Superintendent of SCI Graterford, and MSH (collectively referred to as the Commonwealth Defendants).

This Report and Recommendation concerns the Plaintiff's claims against the WCJ Defendants. In this regard, on January 4, 2010, the WCJ Defendants filed a Motion for Summary Judgement (doc. no. 136), a Brief in Support (doc. no. 137) and a Concise Statement of Material Facts (doc. no. 138). On February 23, 2010, Plaintiff filed a Response to the WCJ Defendants' Motion wherein he dismissed with prejudice his claims against Defendants Lt. Lowther, Commissioner Ceraso, Commissioner Light, Chairman Balya and the WCJ (doc. no. 163, p. 2). The discussion that follows concerns Plaintiff's claims against the remaining WCJ Defendants.

**A. Standard of Review**

Pursuant to Fed. R. Civ. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, i.e., one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any

2

disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. Whiteland Woods, L.P. v. Township of West Whiteland, 193 F.3d 177, 180 (3d Cir. 1999), Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir.1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rather, the non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." Simpson v. Kay Jewelers, Div. Of Sterling, Inc., 142 F.3d 639, 643 n. 3 (3d Cir.1998). Moreover, the non-moving party cannot defeat a well supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).

## B. Material Facts

Plaintiff, Eric Miskovitch is currently is an inmate at the Allegheny County Jail located in Pittsburgh, Pennsylvania. On January 12, 2005, Plaintiff was detained as an inmate at the WCJ awaiting trial. On the aforesaid date, it was alleged, based upon an anonymous tip, that Plaintiff was planning to escape from the WCJ. On the basis of the tip, at approximately 7:30 p.m. several officers removed Plaintiff from his cell and placed him in the attorney client visiting room in handcuffs and leg shackles. In the meantime, an investigation of the shower area in C-Unit revealed that someone had entered the ceiling area through the access panel and had moved through parts of the ceiling duct work. A missing hose clamp was sticking out of the access panel. In searching Plaintiff's cell, a blue inmate's uniform was discovered that was covered in a powdery substance that was later revealed to be residue of the sprayed on insulation used in the ceiling areas of the prison (doc. no. 136-4, p. 3). Also discovered were nine sheets, a sheet torn in half, a long thin piece of a sheet and two pillow cases. When asked why his uniform was dirty, Plaintiff replied, "You will figure it out." At that time, Lieutenant Lowther, Lieutenant Hostoffer and Maintenance Officer Mitchell arrived on the Unit and Steve Cmar, Deputy Warden of Security, John Walton, Warden and Westmoreland County Detective Richard Kranitz were called in. Plaintiff was then taken to the lieutenant's office where he was interviewed by Lt. Hostoffer.

When Detective Kranitz arrived he interviewed Plaintiff and asked him to strip. When Plaintiff complied, Kranitz observed several scratches and abrasions. Prison personnel took photographs of these injuries. Next, Kranitz requested Sergeant Joseph Beaken to videotape his interview with Plaintiff, which is included as a part of this record. During the interview, which started around 11:00 p.m. that evening, Plaintiff admitted that he tried to escape out of the ceiling

4

area at approximately 6:00 that evening. Specifically, he had opened the ceiling access panel at 9:00 a.m. that morning and waited until after dinner to take his shot. At that time, he used three chairs to get up to the ceiling and searched for about an hour to find a way out. When he did not find one, he climbed back down. When questioned about the scrapes on his body, Plaintiff agreed with Kranitz' statement that they were the result of his climbing around in the crawl space area. When asked, Plaintiff admitted that he had been treated fairly. After the interview, Plaintiff was placed in solitary confinement under suicide watch. One day later, Plaintiff was transferred to the State Correctional Institution at Greensburg. On January 20, 2005, Plaintiff was charged with one count of attempted criminal escape (doc. no. 136-12, p. 6). Subsequently, Plaintiff pleaded guilty to this charge.

When he has admitted to SCI-Greensburg, a three inch bruise was noted on the temporal area of Plaintiff's head, which was examined and photographed by the medical department at the time (doc. nos. 163-32, 163-33, 163-34). At that time, he told SCI-Greensburg personnel that he was beaten by guards at the WCJ. He was interviewed about his allegations by Correctional Officer Robert Brussard on January 13, 2005 (doc. nos. 163-35, 163-36). CO Brussard then wrote a detailed report of his investigation, which was sent to the Superintendent (doc. nos. 163-37, pp. 1-3).

### C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws

of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. *See also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id.* (quoting Chinchello, 805 F.2d at 133). *See also* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

6

The remaining WCJ Defendants include the following: John R. Walton, Warden; Steve Cmar, Deputy Of Security; Lt. Hostoffer; C. O. Rosado; and C.O. Hutchinson, all of whom were employees of the Westmoreland County Jail (WCJ) during the relevant time period. Specifically, Plaintiff claims Defendants Hostoffer, Rosado and Hutchinson physically beat and assaulted him after they removed him from C Unit and placed him in the attorney client visiting room and while he was handcuffed and shackled. He further claims that these guards continued to assault him after he was taken to the lieutenant's office for questioning. He claims that Defendant Walton and Cmar are liable based on their failure to train and/or investigate his accusations of assault.

Plaintiff asserts liability against the WCJ Defendants under the Eighth and Fourteenth Amendments. The Eighth Amendment, as applied to the states through the Fourteenth Amendment, protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In addition, the Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners, as well as at the hands of guards or other state actors. *Id*., 511 U.S. at 833. *See also* Whitley v. Albers, 475 U.S. 312, 318-19 (1986).

Every Eighth Amendment claim alleging cruel and unusual punishment embodies both an objective and a subjective component. First, the alleged deprivation must be objectively sufficiently serious. Second, the defendant prison official must have a sufficiently culpable state of mind. *See* Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective component relates to the "seriousness

7

of the injury" and focuses on whether there has been a deprivation or infliction of pain serious enough to implicate constitutional concerns. The Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (quotations omitted). The subjective component requires inquiry into the defendant's state of mind to determine whether the infliction of pain was "unnecessary and wanton." *Id*. at 6-7.

In an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors relevant to this inquiry include: the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. *Id*. *See also* Brooks v. Kyler, 204 F.3d 102, 104 (3d Cir. 2000) (holding that there is no fixed minimum quantum of injury that a prisoner must prove he suffered through either objective or independent evidence in order to state a claim for excessive force).

In the instant action, Plaintiff claims that Defendant Hostoffer slapped, kicked, punched and kneed him approximately twenty to thirty times while he was confined in the attorney client vising room and continued to do the same after he was transported to the Lieutenant's Office for questioning. He claims that Lt. Hutchinson hit him an unknown amount of times while he was in the Lieutenant's Office. Finally, he claims that Correctional Officer Rosado put on black leather work gloves and hit him three times while he was in the Lieutenant's Office. Defendants seek

8

summary judgment by presenting their own version of the facts, which is that no assault took place. Defendants claim that based upon the affidavits they filed, and the videotaped statement of Plaintiff after the alleged assault, no reasonable jury could find for Plaintiff. In particular, Defendants argue that Plaintiff cannot state a constitutional violation for excessive force because the videotape evidence does not show that he suffered any injuries.

The Court of Appeals for the Third Circuit repeatedly has emphasized that there is no fixed minimum quantum of injury that a prisoner must prove he suffered through either objective or independent evidence in order to state a claim for excessive force. For example, in Brooks v. Kyler, 204 F.3d 102 (3d Cir. 2000), an inmate sued four prison guards under § 1983 alleging that they had beaten him in violation of the Eighth Amendment. Although the undisputed medical evidence showed that the plaintiff suffered only a few scratches on his neck and hands, he testified that he was repeatedly punched in the head, stomped about the back and neck, slammed into a cell wall, choked, threatened, and nearly rendered unconscious. All of this was allegedly done while he was handcuffed. Brooks, 204 F.3d at 104. In reviewing the claim, the Court noted that it was "apparent that the type of vicious, prolonged attack alleged by Brooks would have resulted in far greater injuries than those which he indisputably sustained." Id. at 105. Nonetheless, the Court reversed the district court's grant of summary judgment, stating: "[a]ccepting Brooks's allegations as true, as we must, a jury could find that the defendants acted not merely in good-faith to maintain or restore discipline, but rather out of malice for the very purpose of causing harm." Id. at 109. Thus, where the force used is " 'repugnant to the conscience of mankind,' even a de minimus use of force could be constitutionally significant." Id. at 107 (quoting Hudson, 503 U.S. at 9-10).

Similarly, in Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002), the Court of Appeals reiterated that "the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." Thus, officials who maliciously and sadistically use force against an inmate violate contemporary standards of decency even if the resulting injuries are not significant. Id. at 647. The pivotal inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 649. In Smith, the Court of Appeals reversed the district court, which had granted summary judgment primarily because it determined that the plaintiff's injuries were "so minor that the defendants' account of the incident [wa]s more credible than Smith's, and/or that the force used was not of constitutional dimension." Id. The Court of Appeals held that this determination was "an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide." Id. Thus, Smith and Brooks make clear that the relatively minor nature of an injury alone is not grounds for summary judgment; rather, it is only one feature to be considered by the fact-finder in evaluating the allegations.

Here, Defendants rely on the videotape evidence and affidavits from the officers themselves to argue that Plaintiff's version of the facts is blatantly contradicted by the record such that no reasonable juror could believe it. In making this argument, the Defendants rely on Harris v. Scott, 550 U.S. 372, 380 (2007) wherein the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the key event on which the claim was based.

Recently, in Patterson v. City of Wildwood, 354 Fed. App'x 695 (3d Cir. 2009), the Court of Appeals for the Third Circuit set forth its guidance in utilizing the standard set forth by the Supreme Court in Scott. In that case, the plaintiff instituted a § 1983 civil action alleging that excessive force was used against him during the course of an illegal seizure. The District Court granted summary judgment on Patterson's excessive force claim finding that some force was justified because Plaintiff was resisting arrest. In making this conclusion, the District Court referenced language from Scott v. Harris, for the proposition that when a "blatant contradiction" renders a plaintiff's version essentially unbelievable, the court should not apply the usual standard: "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." The District Court then relied upon a video taken of Plaintiff when he was in the back seat of the police car and testimony of an eye witness who stated that Plaintiff was resisting arrest and was not cooperative with the officers. On appeal, Plaintiff argued that District Court improperly applied Scott v. Harris and also improperly weighed evidence in a manner not appropriate at the summary judgment stage. The Court of Appeals for the Third Circuit agreed that Scott v. Harris did not apply.

> Unlike the videotape relied upon by the Supreme Court in Scott, which depicted the actual incident, the videotape in this case did not capture the incident and could not therefore contradict, let alone "blatantly contradict," the record as to what occurred. While the jury might conclude that the videotape was inconsistent with, or gave rise to different inferences regarding, Patterson's version of events, the videotape in this case does not portray the actual incident; it cannot, and does not, "blatantly contradict" Patterson's version of events as the video did in Scott v. Harris. There, the video of the police chase contradicted Scott's version of the key event on which the claim was based. As Patterson notes, courts have declined to apply the limited exception set forth in Scott v. Harris where a videotape or other

> mechanical depiction does not capture the whole incident or the entire arrest, or where the videotape or mechanical depiction is susceptible to multiple reasonable interpretations.

Patterson, 354 Fed. App'x at 697-98.

Similarly, in the instant action, the videotape evidence in this case was not taken of the events complained; rather it was taken after the fact as in Patterson. Moreover, Plaintiff claims that when he was admitted to SCI-Greensburg, a three inch bruise was noted on the temporal area of his head, which was examined and photographed by the medical department at the time (doc. nos. 163-32, 163-33, 163-34). He claims that he did not tell Detective Kranitz about the incident at the time because he was afraid of Lt. Hostoffer, who appears to be about twice the size of Plaintiff in the videotape. He did tell personnel at SCI-Greensburg about the incident during an interview with Correctional Officer Robert Brussard on January 13, 2005 (doc. nos. 163-35, 163-36). CO Brussard then wrote a detailed report of his investigation, which was sent to the Superintendent (doc. nos. 163-37, pp. 1-3).

At this juncture, the Court cannot agree with Defendants that no reasonable juror could accept his version of the facts. Plaintiff claims that the guards who hit him were anxious about their jobs because Plaintiff's escape attempt occured during their shift when they were supposed to be guarding him. The guards assert that no force of any kind was used. Plaintiff claims that he did not tell anyone about the beatings because he was afraid of repercussions after Detective Kranitz left following the interview. While there does not appear to be any significant injury to Plaintiff's head on the videotape, the Court is unable to see every aspect of Plaintiff's head to determine if there is any bruising. Nor can it see the bruises on Plaintiff's body, which Detective Krantz specifically asked him about. Finally, there is evidence of bruising that was witnessed by SCI-Greensburg

12

personnel that provides some support for Plaintiff's version of the incident at issue. Thus, as in Patterson, neither the videotape evidence nor the guard's affidavits renders Plaintiff's version of the facts essentially unbelievable. Accordingly, Plaintiff has established that there is a genuine issue of material fact as to whether there was any application of force used. *Accord* Bafford v. Nelson, 241 F.Supp.2d 1192, 1202 (D. Kan. 2002) (denying summary judgment where plaintiff inmate was in leg restraints in the shower room and allegedly punched by defendant correction officer several times in the back of the head, causing swelling); Ammouri v. Adappt House, Inc., Civil No. 05-3867, 2008 WL 2405762, at *7 (E.D. Pa. June 12, 2008) (denying summary judgment in Eighth Amendment excessive force case where defendants' actions were contested and the court was unable to determine how much force was used); Jenkins v. Williams, Civil No. 02-331, 2008 WL 1987268, at * 8 (D. Del. May 7, 2008) (denying summary judgment as to state defendants where factual disputes existed). Thus, summary judgement should not be granted as to Plaintiff's claims of excessive force against Defendants Hostoffer, Hutchinson and Rosado.

Plaintiff also seeks to assert liability against Defendant John Walton, Warden of WCJ and Steve Cmar, Deputy Of Security, based upon their supervisory capacities at WCJ. Specifically, he alleges that these Defendants are liable based upon their failure to investigate his allegations of excessive force and their failure to properly train WCJ correctional officers in the proper use of force.

In this regard, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to <u>prevent</u> violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official <u>knowingly permits</u> a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838

F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id.* (quoting Chinchello, 805 F.2d at 133). *See also* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997). In order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinates' violations. *See* Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

The Court of Appeals for the Third Circuit set forth the standard for imposing liability against a supervisor under § 1983 in Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989). Relying on the precepts set forth by the United States Supreme Court in City of Canton v. Harris, 489 U.S. 378 (1989), the Sample court noted that "a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person'–whether a natural one or a municipality–has exhibited deliberate indifference to the plight of the person deprived." Sample, 885 F.2d at 1117-18. The Court continued that in order to establish supervisory liability, the plaintiff must identify a specific supervisory practice or procedure that the defendant failed to employ, that the existing custom or practice without that specific practice or procedure created an unreasonable risk of harm, that defendant was aware that this unreasonable risk existed, that defendant was indifferent to that

risk, and that plaintiff's harm resulted from defendant's failure to employ that supervisory practice or procedure. Id. at 1118. As to causation, the Sample court concluded as follows:

> On remand, the district court should bear in mind that under the teachings of City of Canton it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [plaintiff] identify specifically what it is that [defendant] failed to do that evidences his deliberate indifference. Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the "identified deficiency" and the "ultimate injury."

Sample, 885 F.2d at 1118.

The Court of Appeals for the Third Circuit further elaborated the requirements for imposing supervisory liability in Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001). In that case, the Court held that with respect to supervisory liability for Eighth Amendment claims, plaintiffs must first identify a "specific supervisory practice or procedure" that the defendant supervisor failed to employ, and then prove the following: 1) the existing custom and practice without that specific practice or procedure created an unreasonable risk; 2) the supervisor was aware that the unreasonable risk was created; 3) the supervisor was indifferent to that risk; and 4) the injury resulted from the policy or practice.

The simplest way for a plaintiff to make out such a claim is to demonstrate a supervisor's failure to respond appropriately when confronted by a pattern of injuries similar to Plaintiff's, thereby suggesting deliberate indifference on the part of the supervisor. Sample, 885 F.2d at 1118. That is not the only way to make out such a claim, as "there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of

15

supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." Beers-Capitol, 256 F.3d at 134 (citation omitted). Thus, for Plaintiffs' claim seeking to hold Defendants Walton and/or Cmar liable, he must show either that Defendant Walton and/or Cmar failed to adequately respond to a pattern of past occurrences of injuries like Plaintiff's or that the risk of constitutionally cognizable harm was so great and so obvious that the risk and the failure of Defendant Walton and/or Cmar to respond supports a finding that the four-part test stated above is met.

Plaintiff has not set forth any evidence to show that either Walton or Cmar was aware of any "pattern" of occurrences of alleged excessive force. One instance does not constitute a "pattern of past occurrences" as contemplated by Sample. Nor has Plaintiff alleged that the risk of constitutionally cognizable harm was so great and so obvious that either Defendant must have known of the excessive risk but was indifferent to it. Although the facts may support liability on a theory of negligence, it can not be inferred that either Defendant "knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm." Farmer v. Brennan, 511 U.S. 825, 846 (1994). As the Court of Appeals for the Third Circuit has explained, it is not enough to allege that defendant should have recognized the excessive risk and responded to it; a Plaintiff must show that the defendant must have recognized the excessive risk and ignored it. Beers-Capitol, 256 F.3d at 138 (citing Farmer).

As stated above, a prison official may be held liable for an offense against the Eighth Amendment only if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault, requiring proof that a

defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997). Nothing in the record supports any showing that Defendant Walton or Cmar knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

Moreover, the record does not support liability on the basis of any failure to properly train or supervise theory. In this regard, to establish liability on a failure to train theory, Plaintiff must set forth specific allegations that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001) (citing City of Canton, 489 U.S. at 390 (1989)).

This is unlike the situation presented in Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996), *cert. denied*, 117 S. Ct. 1086 (1997). In that case, the plaintiff claimed that the city maintained a custom or policy of tolerating the use of excessive force by its officers. As proof of the city's acquiescence in such policy, the plaintiff in Beck presented evidence of a series of actual, written civilian complaints of similar nature containing specific information pertaining to the use of excessive force and verbal abuse by the same officer. All but one of the complaints had been transmitted through the police department chain of command to the Chief of Police. In addition, the plaintiff presented annual department reports detailing the high rate of excessive force incidents. After reviewing this evidence, the Court of Appeals for the Third Circuit concluded that, because the complaints came in a narrow period of time and were of a similar nature, a reasonable jury could have inferred that the Chief of Police of Pittsburgh and his department knew, or should have known, of the officers violent behavior in arresting citizens. In addition, the Court noted that, although

17

department reports highlighted concerns of excessive force, the City took no action in response to such concerns. Based on this record, the court determined that Beck had presented sufficient evidence from which a reasonable jury could have inferred that responsible policymakers for the City of Pittsburgh knew about, and acquiesced in, the tacit use of excessive force by its police officers. *Id*. at 976.

In the case at bar, however, Plaintiff has presented no evidence to demonstrate that his alleged injuries resulted from any failure to train or supervise WCJ employees. Unlike the plaintiff in Beck, Miskovitch fails to make any specific factual allegations that either Warden Walton or Cmar is liable based on a policy or custom of refusing to provide adequate training regarding excessive force. Similarly, he fails to allege that any similar conduct has occurred in the past such that these Defendants should have been aware that an unreasonable risk of harm existed. *See* Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) ("the record before us is critically deficient of evidence on which a jury reasonably could have based its conclusion that [the municipality] was deliberately indifferent to the need to train . . . and that this failure to train was the actual cause of the plaintiffs' injuries.").

## III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion for Summary filed by Defendants Walton, Cmar, Hostoffer, Lowther, Rosado, Hutchinson, Balya, Ceraso, Light and the Westmoreland County Jail (doc. no. 136) be granted except as to Plaintiff's claim of excessive force against Defendants Hostoffer, Rosado and Hutchinson.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of issuance of

this Order to file an appeal to the District Judge, which includes the basis for objection to this Order. Any party opposing the appeal shall have fourteen (14) days from the date of service of the notice of appeal to respond thereto. Failure to file a timely notice of appeal may constitute a waiver of any appellate rights.

Dated: May 19, 2010

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Eric M. Miskovitch
    49844
    Allegheny County Jail
    950 2nd Ave.
    Pittsburgh, PA 15219