IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC M. MISKOVITCH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 06-1410 |
| | ) | |
| v. | ) | Judge Donetta W. Ambrose |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| LT. HOSTOFFER, et al., | ) | |
| | ) | Doc. Nos. 121, 152, 169 & 223 |
| Defendants | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Plaintiff's Motion for Summary Judgment (doc. no. 121) and Cross Motion for Summary Judgment (doc. no. 169) be denied and that the Motion for Summary Judgement (doc. no. 152) and Cross Motion for Summary Judgment (doc. no. 223) filed by Defendants Rustin, Leon, Donis, Reese, Worrall, Mazzocca, and the Allegheny County Jail be granted.

### II. REPORT

On February 2, 2008, Plaintiff, Eric M. Miskovitch, filed a Second Amended Complaint against 22 Defendants raising allegations concerning incidents that allegedly occurred during his various periods of incarceration at SCI Graterford, the Westmoreland County Prison, Allegheny County Jail, and Mayview State Hospital. Defendants include the following: John R. Walton, Warden; Steve Cmar, Deputy Of Security; Lt. Hostoffer; Lt. Lowther; C. O. Rosado; and C.O. Hutchinson, all of whom were employees of the Westmoreland County Jail (WCJ) during the relevant time period; Tom Balya, Chairman of the WCJ; Thomas C. Ceraso and Phil Light, Commissioners for the WCJ; and the WCJ (hereinafter collectively referred together as the WCJ

Defendants); Warden Ramon Rustin, Lt. Luis Leon, Major Donis, Captain Reese, C.O. Worrall, C.O. Mazzocca, all of whom were employees of the Allegheny County Jail (ACJ) during the relevant time period; and the ACJ (hereinafter collectively referred together as the ACJ Defendants); Dr. Rodriguez, a physician who provided medical services to inmates at the ACJ during the relevant time period; Dr. Petras, a physician who provided medical services to persons confined at the Mayview State Hospital;  Corrections Officer Keith, an employee of Mayview State Hospital (MSH); David Diguglielmo, Superintendent of SCI Graterford, and MSH (collectively referred to as the Commonwealth Defendants).

This Report and Recommendation concerns Plaintiff's claims against the ACJ Defendants. In this regard, on November 6, 2009, Plaintiff filed a Motion for Summary Judgement against the ACJ Defendants regarding their prior policy of shackling inmates during exercise (doc. no. 121). On February 5, 2010, the ACJ Defendants filed a Motion for Summary Judgement (doc. no. 152), a Brief in Support (doc. no. 153) and a Concise Statement of Material Facts (doc. no. 154).  On March 9, 2010, Plaintiff filed a Response to the ACJ Defendants' Motion wherein he dismissed with prejudice his claims against Defendants Leon and the ACJ (doc. no. 169, p. 1) and dismissed Count Seven of his Second Amended Complaint.  In that same document, Plaintiff filed a Cross-Motion for Summary Judgement against the remaining ACJ Defendants (doc. no. 169) with respect to the following claims.

1. Denied exercise
2. Fear for safety disregarded
3. Denial of handbooks/policy
4. Indefinite confinement on restriction status
5. Tied  to a bed for 30 hours
6. Slamming his arm in the food slot
7. Denied dental care
8 Arbitrarily denied property

Doc. No. 169, p. 5. On May 14, 2010, the ACJ Defendants filed a Response to this Motion and a Cross Motion for Summary Judgment (doc. no. 223).

## A. Standard of Review

Pursuant to Fed. R. Civ. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, i.e., one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. Whiteland Woods, L.P. v. Township of West Whiteland, 193 F.3d 177, 180 (3d Cir. 1999), Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir.1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rather, the non-moving party must respond "by

3

pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." <u>Simpson v. Kay Jewelers, Div. Of Sterling, Inc.</u>, 142 F.3d 639, 643 n. 3 (3d Cir.1998). Moreover, the non-moving party cannot defeat a well supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his pleadings. <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

### B. Plaintiff's Claims

In his Second Amended Complaint, Counts Two, Three, Four and Five seek to assert liability against the ACJ Defendants.[1] Count Two makes claims against Defendants Rustin, Donis, Reese and Worrall[2] as follows. During the year 2006 Plaintiff was incarcerated at the ACJ on Unit 8E awaiting trial on state criminal charges in Allegheny County, Pennsylvania. At that time, ACJ policy required that all inmates housed at 8E be locked in their cells 23 hours a day, during the week, and 24 hours a day on weekends. During the week, inmates were allowed a one (1) hour

---

1. Plaintiff dismissed the allegations made against the ACJ Defendants in Count 7 in his Response to Defendants' Motion, see doc. no. 169.

2. Plaintiff dismissed Defendants Leon and the ACJ in his Response, doc. no. 169.

exercise period each day inside an exercise pen with leg shackles. On July 5, 2006, Plaintiff was required to obtain medical treatment due to multiple abrasions or contusions to his legs and ankles suffered by the leg shackles. Plaintiff filed grievances to Defendants Luis Leon and Defendant Donis but Defendants either denied Plaintiff's grievances or did not reply to same.

During that same time period, Plaintiff attempted to file grievances to Defendant Reese detailing the fact that Plaintiff and other similarly situated inmates on Unit 8E were deprived of regular mail, forced to consume "bag meals" which are nutritionally inadequate and cause severe constipation, denied dental care, forced to endure arbitrary cell searches, which in the case of Plaintiff resulted in his personal property being thrown in the toilet, and Plaintiff was denied an inmate handbook which would have detailed jail policy on the above and how to file grievances. Additionally, Plaintiff alleges that he and similarly situated inmates were systematically denied grievance forms.

In June of 2006, Plaintiff was placed on "restriction" by C. O. Worrall for allegedly passing an unauthorized item to another inmate. Restriction results in the inmate's loss of exercise and reduction of regular meals and shower. In addition, Plaintiff was denied commissary privileges which caused Plaintiff to be denied the right to envelopes, postage, paper, cosmetics and other basic necessities. Plaintiff was never afforded a hearing or the opportunity to rebut the allegations lodged against him by Defendant Worrall. Plaintiff eventually filed a grievance to Defendants Leon, Donis, Reese and Rustin.

Count Three makes allegations against Defendants Rustin and Dr. Rodriguez. In this regard, Plaintiff claims that on July 14, 2006, Dr. Rodriguez questioned Plaintiff as to whether he was prepared to return to Unit 8E from the mental health unit where he temporarily had been staying.

Plaintiff replied that a return to Unit 8E would make him suicidal. Rodriguez thereupon ordered the Plaintiff's clothing removed and involuntarily administered thorazine. The drug was administered to Plaintiff while he was physically strapped to his bed. Plaintiff was kept strapped on the bed under the influence of the anti-psychotic drug without adequate warm clothing or any blanket for a period in excess of thirty (30) hours. Subsequently, on or about August 4, 2006, Plaintiff was forced by Dr. Rodriguez to receive "bag meals" due to his refusal to take his medication. Plaintiff filed a grievance pertinent to the behavior modification meal. He appealed to Warden Rustin and to final review. No reply was made to Plaintiff's request for assistance.

Count Four names Defendants Rustin and Mazzocca. In this regard, Plaintiff alleges that on February 22, 2006, his papers were removed from his cell pursuant to a cell search and thrown on the floor outside his cell. Plaintiff was informed by another inmate that all materials left outside the cells would be discarded in the trash. Defendant Mazzocca came to Plaintiff's cell accompanied by a nurse to deliver his medications. When the food slot was opened, Plaintiff reached his arm outside to get his legal documents. Plaintiff claims that Defendant Mazzocca immediately became enraged and began twisting, kicking, and punching Plaintiff's arm. Plaintiff states that he was taken to the nurses' station for the laceration and contusions he suffered. Plaintiff filed a grievance the next day and appealed to Warden Rustin and the Oversight Board of the County Jail;.no official reply or decision was rendered.

Count Five asserts liability against Defendant Rustin. In this Count, Plaintiff alleges that on February 12, 2006, Plaintiff wrote an inmate request slip addressed to "Warden/McCall/ Leon/Emerick," which provides as follows.

> Although I do not request self lock-up I will tell you this. Several
> inmates want to either harm me or kill me... I am OK with a "fair

one" or fair fight.  I am not OK with getting stabbed.  I request showers alone.  I'll deal with the rest.  There are 4 maybe 5 guys that hate me up here.  Hey, you want me in the hole, deal with it.

Doc. No. 169-13, p.1.

On February 14, 2006, while being escorted from the yard, Plaintiff was attacked by another inmate housed in cell 201.  Plaintiff claims that the inmate attacked him from behind, hitting him with his handcuffs "club-style" in the side of his neck causing a temporary black out (doc. no. 169-14, p. 1).  Plaintiff claims that he filed a grievance and an appeal to Defendant Rustin but no reply or decision was received.

### C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.  Rizzo v. Goode, 423 U.S. 362 (1976).  Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions.

Rode, 845 F.2d at 1207.  *See also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach.  Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I).  However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate."  *Id.* (quoting Chinchello, 805 F.2d at 133).  *See also* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

Plaintiff's claims are discussed *seriatim* below.

### D. First Amendment

Throughout the lengthy record in this action, Plaintiff complains that the ACJ Defendants denied him access to courts.  The right of access to the courts is guaranteed by the First Amendment of the United States Constitution.  In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Id. at 828.  However, in Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court effectively repudiated much of its prior holding in Bounds.  In Lewis, the Supreme Court held that Bounds did not

recognize an independent right in prisoners to have an adequate law library; instead, it concerned the established right of access to the courts. <u>Lewis</u>, 518 U.S. at 351. Thus, the <u>Lewis</u> Court held that, in order to successfully challenge a denial of this right of access to the courts, it is not enough for an inmate to establish that the law library provided was inadequate or he was denied access either to the law library or to legal materials; rather, he must establish that such inadequacies in the library or in accessing legal materials caused him actual harm.

In <u>Christopher v. Harbury</u>, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. <u>Christopher</u>, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. <u>Christopher</u>, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." *Id*. The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. *Id*. at 414.

Here, Plaintiff has failed to identify any legal action he was unable to pursue as a result of Defendant's alleged actions. Nor has he alleged a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Thus, the ACJ Defendants are entitled to summary judgment as to this claim.[3]

## E. Eighth Amendment

Several of Plaintiff's claims seek to impose liability against Defendants under the Eighth Amendment. The Eighth Amendment, as applied to the states through the Fourteenth Amendment, protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. Prison officials must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. Farmer, 511 U.S. at 828.

In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions,

_____

3. Plaintiff dismissed the retaliation claims set forth in Count Seven, which are the only other claims that assert liability under the First Amendment. To the extent that Plaintiff is trying to raise a First Amendment challenge with respect to his claim regarding the denial of an inmate handbook and/or grievance forms, Defendants correctly point out that Plaintiff does not have a constitutional right to a prison grievance system, more fully discussed *infra*. Thus, as the Court is not holding that his claims are barred due to his failure to have availed himself of any grievance procedures, he can not state a First Amendment claim.

deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  The Supreme Court has explained that the first showing requires the court objectively to determine whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim.  Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (citations omitted).[4]

Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials.  Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.  The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind.  *Id.*  "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  Farmer, 511 U.S. at 834 (quotation omitted).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

---

4 *See also* Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990) (to objectively determine whether a "serious deprivation" of a basic human need has occurred (*i.e.*, whether prison conditions rise to the level of unconstitutional punishment), there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition).

Farmer, 511 U.S. at 838.  Furthermore, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.*, 511 U.S. at 845.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

1.    Conditions of Confinement  - Unit 8E and Restriction Status

Plaintiff complains about the restrictive conditions of confinement in Unit 8E.  Specifically, he claims that inmates are locked in their cells 23 hours a day during the week and 24 hours a day on the weekends, required to exercise in shackles, deprived of regular meals and required to consume bag meals, denied dental care, forced to endure arbitrary cell searches, denied inmate handbooks and denied commissary privileges.  Plaintiff can not prevail on his claim unless he can demonstrate that the conditions of his confinement deprived him of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety.   Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual.  Hutto v. Finney, 437 U.S. 678, 686 (1978); Spaight v. Coughlin, 104 F.3d 350 (Table), 1996 WL 518507 (2d Cir. 1996), *cert. denied*, 117 S.Ct. 972 (1997); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir. 1992); Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment") (citing Hutto), *cert. denied*, 462 U.S. 1137 (1983).

The Constitution does not mandate comfortable prisons. Rhodes, 452 U.S. at 349. Prisons housing "persons convicted of serious crimes cannot be free of discomfort." *Id*. Plaintiff's unsupported allegations do not demonstrate inhumane treatment or the substantial risk of serious harm. While the Eighth Amendment requires prison officials to provide adequate nutrition to convicted prisoner, only extreme deprivations state a violation of the Eighth Amendment. Hudson v. McMillan, 503 U.S. 1, 8-9 (1992). The conditions presenting the risk must be "sure or very likely to cause serious illness and needless suffering," and give rise to "sufficiently imminent dangers." Helling v. McKinney, 509 U.S. 25, 33, 34-35 (1993). In order to prevail on such a claim there must be a "substantial risk of serious harm," an "objectively intolerable risk of harm" that prevents prison officials from pleading that they were "subjectively blameless for purposes of the Eighth Amendment." Farmer, 511 U.S. at 842, 846, and n. 9.

The Courts are unanimous in holding that the conditions in restrictive housing in Pennsylvania prisons do not, in and of themselves, violate the Eighth Amendment. *See* Griffin v. Vaughn, 112 F.3d. 703 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); Fortson v. Kelchner, 2009 WL 693247, At *3 (W.D. Pa. Mar. 13, 2009) (granting Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claim regarding confinement in the RHU and SMU); Pressley v. Blaine, 544 F.Supp.2d 446, 453 (W.D.Pa. 2008) (holding that the conditions of disciplinary confinement did not implicate the Eighth Amendment); *rev'd on other grounds*, 352 Fed. App'x 701 (3d Cir. 2009); Dantzler v. Beard, Civil No. 05-1727, 2007 WL 5018184, at *11-12 (W.D. Pa. Dec. 6, 2007) (holding that the conditions of confinement in the SMU and LTSU did not amount to cruel and unusual punishment in violation of the Eighth

Amendment); <u>Woods v. Abrams</u>, Civil No. 06-757, 2007 WL 2852525, 14 (W.D. Pa. Sept. 27, 2007) (holding that the conditions of confinement in the LTSU did not satisfy the objective component of an Eighth Amendment claim); <u>Banks v. Beard</u>, Civil No. 03-659, 2006 WL 2192015, at *11 (W.D. Pa. Aug. 1, 2006) (same); <u>Rivera v. Pennsylvania Dept. of Corrections,</u> 837 A.2d 525, 530-532 (Pa. Super. 2003) (same).

Plaintiff does make specific complaints about receiving bag meals but does not provide any evidence concerning when, or how often, he was required to have "bag meals." Nor does he contend that he was denied consecutive meals or that he suffered any ill effects from these meals. In <u>Veteto v. Miller</u>, 829 F. Supp. 1486 (M.D. Pa. 1992), the district court dismissed an inmate's Eighth Amendment claim for the denial of meals because the Constitution does not guarantee specific amounts of food and because the complaint did not contain allegations that the inmate "went hungry." *Id.* at 1496. Thus, the inmate could show neither deliberate indifference by prison officials nor could he show that he suffered a denial of a basic, identifiable human necessity. *Id.* Although plaintiff complains about the quantity and nutritional quality of the meals he was provided, he has failed to demonstrate any harm to his health as a result. Thus, Defendants are entitled to summary judgement as to this claim. *Accord* <u>Ford v. Brd. of Mgrs of New Jersey State Prison</u>, 407 F.2d 937, 939-940 (3d Cir. 1969) (no Eighth Amendment claim where prisoner fed four slices of bread and one pint of water three times a day with a full meal every three days); <u>Adams v. Kincheloe</u>, 743 F.Supp. 1385, 1391 (E. D. Wash. 1990) (placing inmate on disciplinary five-day diet of "nutra-loaf" did not violate the Eighth Amendment especially since inmate did not suffer from any weight loss or medical conditions); <u>Briggs v. Heidlebaugh</u>, Civil No. 96-3884, 1997 WL 318081 *3 (E. D. Pa. May 22, 1997) (feeding inmate nothing but bread and cheese for seventy-two hours did not support

an Eighth Amendment violation);Rivera v. Pennsylvania Dept. of Corrections 837 A.2d 525, 530-532 (Pa. Super. 2003) (method of using food loaf as behavior modification does not violate the Eighth Amendment).

Plaintiff further claims that he was subjected to infrequent showers in restrictive custody. The Eighth Amendment does not require that inmates receive frequent showers. DiFilippo v. Vaughn, Civil No. 95-909, 1996 WL 355336 at *5 (E. D. Pa. June 24, 1996) (holding that the Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers). Likewise, the Eighth Amendment does not require hot showers. *See* Lopez v. Robinson, 914 F.2d 486, 492 (4th Cir.1990). Plaintiff's claims of infrequent showers, without more, does not state a claim under the Eighth Amendment. *See* Davenport v. DeRobertis, 844 F.2d 1310, 1316 (7th Cir.) (holding that one shower a week constitutionally sufficient), *cert. denied*, 488 U.S. 908 (1988); Veteto v. Miller, 829 F.Supp. 1486, 1496 (M. D. Pa.1992) (holding that deprivation of showers during period of placement in administrative detention did not violate the Eighth Amendment); Devon v. Warden SCI-Mahanoy, Civil No. 08-1448, 2008 WL 3890161, 4 (M. D. Pa. Aug. 19, 2008) (holding that thirteen days without shower, shave or recreation did not violate the Eighth Amendment); Briggs v. Heidlebaugh, Civil No. 96-3884, 1997 WL 318081 *3 (E. D. Pa. May 22, 1997) (holding that suspension of shower privileges for two weeks did not violate the Eighth Amendment).

Plaintiff next claims that he was denied a meaningful opportunity to exercise because he was shackled during his recreation periods. Although the constitution does not require out-of-cell exercise, the near-total deprivation of the opportunity to exercise may violate the Eighth Amendment unless the restriction relates to a legitimate penological purpose. However, lack of exercise can only rise to this level "[w]here movement is denied and muscles are allowed to atrophy, [and] the health

of the individual is threatened . . .."  French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986).

Deprivation orders and restraining orders which limit a prisoner's recreation to one hour at a time in full restraints does not violate a prisoner's Eighth Amendment rights when security and safety purposes require restraints and a prisoner is able to move around in the recreation area.  *See* Dawes v. Coughlin  964 F.Supp. 652 (N.D.N.Y. 1997), *aff'd*, 159 F.3d 1346 (2d Cir. 1998); Malik v. Goord, 61 Fed. App'x 768 (2d Cir. 2003); Dabney v. McGinnis, 2006 WL 1285625, 5 (W.D.N.Y. May 9, 2006); Wilson v. Shannon, 982 F.Supp.337, 341 (E. D. Pa.1997) (granting summary judgment against plaintiff prisoner's Eighth Amendment claim based on a denial of exercise, holding there was no deliberate indifference where "[plaintiff] was denied exercise for only a brief period of time and denial of exercise was in response to disciplinary problems created by the plaintiff). Here, Plaintiff was a known escape risk and security risk (doc. no. 223-2).  Thus, the ACJ policy requiring shackling during exercise did not violate Plaintiff's Eighth Amendment rights.

Even if the court were to conclude that Plaintiff's allegations regarding ACJ's exercise policy set forth an Eighth Amendment violation, a finding that the Court does not make, Defendants are entitled to qualified immunity in regards to this claim.  In this regard, state officials performing discretionary acts enjoy "qualified immunity" from money damages in section 1983 actions when their conduct does not violate "clearly established" statutory or constitutional rights of which a "reasonable person" would have known at the time the incident occurred.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The first inquiry under a qualified immunity analysis is whether the plaintiff has established a violation of a "clearly established constitutional right."

> The contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.

> This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

The second inquiry concerns the reasonableness of the defendant's actions. The test for qualified immunity is based on objective reasonableness -- "whether a reasonable officer could have believed [the challenged action] to be lawful, in light of clearly established law and the information the [ ] officers possessed." Giuffre v. Bissell, 31 F.3d 1241, 1255 (1994) (quoting Anderson v. Creighton, 483 U.S. at 641). "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officers in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful." Giuffre, 31 F.3d at 1255 (internal quotation omitted). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' " Giuffre, 31 F.3d at 1255 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Saucier, 533 U.S. at 201. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id. In Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808 (2009), the Court reconsidered the mandatory procedure required in Saucier, and held that " while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs

of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818.

In the case at bar, Defendants are entitled to qualified immunity under the second prong of the immunity test, which requires that the right be clearly established. The relevant, dispositive inquiry is whether an officer could reasonably believe that his or her conduct complied with the law. Pearson, 129 S.Ct. at 823. A plaintiff can demonstrate that the right is clearly established by showing a closely analogous case that established a right to be free from the alleged actions under similar circumstances or by showing that defendants should have been aware that they were violating his constitutional rights. If, however, the actions alleged violated the prisoner's rights, defendants are entitled to qualified immunity if prior decisions did not clearly establish that actions taken were violative of the constitution.

With respect to the circumstances presented at bar, this Court has not discovered any legal authority demonstrating a clearly established rule prohibiting Defendants from acting as they did in responding to the security risk posed by Plaintiff. In other words, there is no authority that suggests that it was a violation of constitutional law for correctional officers to use shackles during an inmate's recreation privileges when that inmate had on numerous times attempted to escape from his confinement. *See, e.g.*, Morgan v. Rowland 2006 WL 695813, 8 (D. Conn. Mar. 17, 2006) (holding that Defendants entitled to qualified immunity when inmate had the opportunity to go to the recreation yard for five hours each week in full restraints and was not restrained in his cell); Weems v. St. Lawrence, Civil No.409-065, 2009 WL 2422795 (S.D. Ga. Aug. 6, 2009) (shackling pre-trail detainee during exercise did not violate Fourteenth Amendment). Thus, Defendants are entitled to qualified immunity from Plaintiff's claim regarding the use of shackles during exercise

because reasonable officers in their position at the relevant time could have believed that their conduct would be lawful.

Finally, although Plaintiff makes an bald claim that he and other similarly situated inmates were denied dental care, he has failed to set forth any evidence in support of this claim. Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Here, Plaintiff has not met his burden of showing that he or any other inmate was denied dental care while housed at the ACJ.

Consequently, Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment conditions of confinement claims. *Cf*. Veteto v. Miller, 829 F.Supp. 1486, 1496 (M.D.Pa.1992) (observing that the federal prison at Lewisburg is "not a restaurant, a haberdashery or a health spa" and therefore "admittedly uncomfortable conditions [*i.e.*, the denial of "meals, clean cloths, showers and recreation periods"] ... do not, by themselves, articulate a situation that could be fairly characterized as cruel and unusual punishment"); Barajas v. Waters, 815 F.Supp. 222, 226 (E. D. Mich.1993) (rejecting claims of overcrowding, poor sanitation, inadequate lighting and ventilation, unappetizing food, and less than ideal medical treatment, and stating that "absent the extreme deprivation of a single human need, these allegations, alone or in combination, do not raise to the level of cruel and unusual punishment"), *aff'd without op.*, 21 F.3d 427 (6th Cir.1994).[5]

2.      Use of Restraints/Thorazyne Treatment

_____

5. Further, it goes without saying that the alleged denial of an inmate handbook, grievance forms, jail policies, envelopes, postage, paper, cosmetics and commissary privileges do not state a claim under the Eighth Amendment as none of these items can be considered a basic necessity.

In Count Three, Plaintiff makes allegations against Defendants Rustin and Dr. Rodriguez. In this regard, Plaintiff claims that on July 14, 2006, Defendant Dr. Rodriguez questioned him as to whether he was prepared to return to Unit 8E from the mental health unit where he temporarily had been staying. Plaintiff replied that a return to Unit 8E would make him suicidal. Rodriguez thereupon ordered Plaintiff's clothing removed and had him physically strapped to a bed where he was administered Thorazyne. Plaintiff was kept strapped on the bed under the influence of the anti-psychotic drug without adequate warm clothing or any blanket for a period in excess of thirty (30) hours.

In order to establish Defendants' liability, Plaintiff must show that they unnecessarily and wantonly inflicted pain upon him or inflicted pain totally without penological justification. Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Objectively, the question is whether contemporary standards of decency have been violated. Hudson v. McMillian, 503 U.S. 1, 8 (1992). Subjectively, the inquiry is whether force was applied in a good faith effort to maintain or restore order or maliciously and sadistically for the very purpose of causing harm. Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The Supreme Court has noted that when the potential for violent confrontation and conflagration ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight. Whitley, 475 U.S. at 321. Prison officials are accorded "wide-ranging deference" in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Id. at 322. "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain ..., the case should not go to the jury." Id.

As an initial matter, the Court notes that the Eighth and Fourteenth Amendment protections afford plenty of operating space for the control of dangerously violent detainees and convicted criminals. *See, e.g.*, Kennedy v. Doyle, 37 Fed. App'x 755 (6th Cir. 2002) (finding that top-of-bed restraints were not excessive force when dealing with an unruly inmate); Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir.1999) (use of handcuffs and shackles to restrain prisoner for 24 hours after he threw water on corrections officer did not violate Eighth Amendment); LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (shackling a dangerous inmate while showering does not violate Eighth Amendment). Hence, "[r]estraints on an inmate do not violate the [Eighth] amendment unless they are 'totally without penological justification,' 'grossly disproportionate,' or 'involve the unnecessary and wanton infliction of pain.' " Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)); Carter v. Seidman, Civil No. 08-11862, 2009 WL 1212328 at * 3-4 (E.D. Mich. May 4, 2009) (rejecting claim that multiple-sclerosis afflicted inmate's placement in "top-of-bed" restraints for 30 hours violated Eighth Amendment); Anthony v. Weidman, Civil No. 07-10467, 2008 WL 2484589 (E.D. Mich. June 18, 2008) (holding that the uncontradicted evidence established a pattern of verbal and physical abuse on the part of Plaintiff, which justified the forcible restraint); Teal v. Braxton, Civil No. 04-00406, 2006 WL 467985 (W.D. Va. Feb. 29, 2006) (use of restraints justified by inmate's behavior); Keves v. O'Brien, Civil No. 06-00437 (W.D. Va. July 27, 2006) (finding no constitutional violation where inmate was restrained for thirty hours by ambulatory restraints and he failed to allege that he suffered any actual injury as a result of the restraint).

Here, the only remaining ACJ Defendant Plaintiff claims is liable in this Count is Warden Rustin. Plaintiff does not allege, and there is no reason to believe, that Warden Rustin was

personally responsible for having him tied to a bed for thirty hours. While Warden Rustin is the

supervisory official in charge of the prison system, that fact alone is not a basis to hold him liable

for federal civil rights violations of his subordinates under any theory of strict liability or vicarious

liability. *See* Johnson v. Rush, Civil No. 07-4243, 2009 WL 237187 (3d Cir. Feb. 3, 2009)

(upholding dismissal of supervisor who denied grievance but who did not have any personal

involvement in the claims alleged).

The Court of Appeals for the Third Circuit set forth the standard for imposing liability

against a supervisor under § 1983 in Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989). Relying on

the precepts set forth by the United States Supreme Court in City of Canton v. Harris, 489 U.S. 378

(1989), the Sample court noted that "a 'person' is not the 'moving force [behind] the constitutional

violation' of a subordinate, unless that 'person'–whether a natural one or a municipality–has

exhibited deliberate indifference to the plight of the person deprived." Sample, 885 F.2d at 1117-18.

The Court continued that in order to establish supervisory liability, the plaintiff must identify a

specific supervisory practice or procedure that the defendant failed to employ, that the existing

custom or practice without that specific practice or procedure created an unreasonable risk of harm,

that defendant was aware that this unreasonable risk existed, that defendant was indifferent to that

risk, and that plaintiff's harm resulted from defendant's failure to employ that supervisory practice

or procedure. *Id*. at 1118. As to causation, the Sample court concluded as follows:

> On remand, the district court should bear in mind that under the
> teachings of City of Canton it is not enough for a plaintiff to argue
> that the constitutionally cognizable injury would not have occurred
> if the superior had done more than he or she did. The district court
> must insist that [plaintiff] identify specifically what it is that
> [defendant] failed to do that evidences his deliberate indifference.
> Only in the context of a specific defalcation on the part of the
> supervisory official can the court assess whether the official's

conduct evidenced deliberate indifference and whether there is a
close causal relationship between the "identified deficiency" and the
"ultimate injury."

Sample, 885 F.2d at 1118.

The Court of Appeals for the Third Circuit further elaborated the requirements for imposing

supervisory liability in Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001). In that case,

the Court held that with respect to supervisory liability for Eighth Amendment claims, plaintiffs

must first identify a "specific supervisory practice or procedure" that the defendant supervisor failed

to employ, and then prove the following: 1) the existing custom and practice without that specific

practice or procedure created an unreasonable risk; 2) the supervisor was aware that the

unreasonable risk was created; 3) the supervisor was indifferent to that risk; and 4) the injury

resulted from the policy or practice.

The simplest way for a plaintiff to make out such a claim is to demonstrate a supervisor's

failure to respond appropriately when confronted by a pattern of injuries similar to Plaintiff's,

thereby suggesting deliberate indifference on the part of the supervisor. Sample, 885 F.2d at 1118.

That is not the only way to make out such a claim, as "there are situations in which the risk of

constitutionally cognizable harm is so great and so obvious that the risk and the failure of

supervisory officials to respond will alone support findings of the existence of an unreasonable risk,

of knowledge of that unreasonable risk, and of indifference to it." Beers-Capitol, 256 F.3d at 134

(citation omitted). Thus, for Plaintiffs' claim seeking to hold Defendants Rustin liable for a deficient

policy, he must show either that Defendant Rustin failed to adequately respond to a pattern of past

occurrences or that the risk of constitutionally cognizable harm was so great and so obvious that the

risk and the failure of Defendant Rustin to respond supports a finding that the four-part test stated above is met.

Plaintiff has not set forth any evidence to show that either Rustin was aware of any "pattern" of occurrences of alleged excessive force. Nor has Plaintiff alleged that the risk of constitutionally cognizable harm was so great and so obvious that either Defendant must have known of the excessive risk but was indifferent to it. As stated above, there is no prohibition under the Eighth Amendment for using four point restraints or top of bed restraints in certain circumstances. Thus, there is no basis for concluding that Defendant Rustin "knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm." Farmer v. Brennan, 511 U.S. 825, 846 (1994). As the Court of Appeals for the Third Circuit has explained, it is not enough to allege that defendant should have recognized the excessive risk and responded to it; a Plaintiff must show that the defendant must have recognized the excessive risk and ignored it. Beers-Capitol, 256 F.3d at 138 (citing Farmer).

Moreover, Plaintiff has not set forth any evidence to hold Defendant Rustin liable on the basis of an alleged failure to train theory. In order to establish liability on a failure to train theory, Plaintiff must set forth specific allegations that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001) (citing City of Canton, 489 U.S. at 390).

In Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996), *cert. denied*, 117 S. Ct. 1086 (1997), the plaintiff claimed that the city maintained a custom or policy of tolerating the use of excessive force by its officers. As proof of the city's acquiescence in such policy, the plaintiff in Beck presented evidence of a series of actual, written civilian complaints of similar nature

containing specific information pertaining to the use of excessive force and verbal abuse by the same officer. All but one of the complaints had been transmitted through the police department chain of command to the Chief of Police. In addition, the plaintiff presented annual department reports detailing the high rate of excessive force incidents. After reviewing this evidence, the Court of Appeals for the Third Circuit concluded that, because the complaints came in a narrow period of time and were of a similar nature, a reasonable jury could have inferred that the Chief of Police of Pittsburgh and his department knew, or should have known, of the officer's violent behavior in arresting citizens. In addition, the Court noted that, although department reports highlighted concerns of excessive force, the City took no action in response to such concerns. Based on this record, the court determined that Beck had presented sufficient evidence from which a reasonable jury could have inferred that responsible policymakers for the City of Pittsburgh knew about, and acquiesced in, the tacit use of excessive force by its police officers. *Id*. at 976.

In the case at bar, however, Plaintiff has not made any specific factual allegations to support any claim that Defendant Rustin should be liable based on a policy or custom of tolerating the use of excessive force by ACJ officers or employees. Specifically, he does not allege any other instances of proven excessive force regarding the application of restraints. Nor does he allege that any valid grievances or complaints concerning excessive force have been filed such that Defendant Rustin would have been put on notice of claims of excessive force. Moreover, Plaintiff has not identified any specific training, supervision or disciplinary action that was deficient.[6] Nor has he established that proper training procedures regarding the use of restraints were not followed.

---

6. *See* DiJoseph v. City of Philadelphia, 947 F. Supp. 834 (E.D. Pa. 1996) (failure to demonstrate any inadequacy in the police training program resulted in dismissal of section 1983 claim against city), *aff'd*, 156 F.3d 1224 (3d Cir. 1998).

Finally, he fails to allege that any similar conduct has occurred in the past such that Defendant

Rustin should have been aware that an unreasonable risk of harm existed. *Cf.* Beers-Capital v.

Whetzel, 256 F.3d 120 (3d Cir. 2001) (holding that executive director of state juvenile detention

facility could not be held liable under § 1983 on grounds that executive director failed to respond

adequately to pattern of past occurrences of employee sexual assaults, given failure to show that

executive director was aware of pattern of sexual assaults by facility employees); Montgomery V.

DeSimone, 159 F.3d 120, 127 (3d Cir. 1998) (holding that the plaintiff's failure to allege any

inadequacy in police training program could not support finding of deliberate indifference necessary

to impose municipal liability); Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) ("the

record before us is critically deficient of evidence on which a jury reasonably could have based its

conclusion that [the municipality] was deliberately indifferent to the need to train and that this

failure to train was the actual cause of the plaintiffs' injuries.").

To the extent that Plaintiff is trying to assert liability against Defendant Rustin solely on the

basis of his supervisory role, such a proposition is directly contrary to long-standing Supreme Court

law interpreting liability under 42 U.S.C. § 1983.

> We held in Monell v. New York City Dept. of Social Servs., 436 U.S.
> [658], 689 [1978], that municipalities and other local governmental
> bodies are "persons" within the meaning of § 1983. We also
> recognized that a municipality may not be held liable under § 1983
> solely because it employs a tortfeasor. Our conclusion rested partly
> on the language of § 1983 itself. In light of the statute's imposition
> of liability on one who "subjects [a person], or causes [that person]
> to be subjected," to a deprivation of federal rights, we concluded that
> it "cannot be easily read to impose liability vicariously on governing
> bodies solely on the basis of the existence of an employer-employee
> relationship with a tortfeasor." *Id*., at 692. Our conclusion also
> rested upon the statute's legislative history. As stated in Pembaur v.
> Cincinnati, 475 U.S. 469, 479 (1986), "while Congress never
> questioned its power to impose civil liability on municipalities for

their own illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others " (citing <u>Monell</u>, supra, at 665-683). We have consistently refused to hold municipalities liable under a theory of respondeat superior. [citations omitted]

Instead, in <u>Monell</u> and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. [citations omitted] Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

<u>Board of County Com'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 403-404 (1997) (emphasis added).

Giving Plaintiff the benefit of all reasonable inferences, he simply has not set forth any basis upon which to hold Defendant Rustin liable with regard to his allegations in Count Three. Specifically, he has failed to demonstrate that Defendant Rustin condoned or fostered any policy or custom of tolerating excessive force against prisoners. Nor has he identified any supervisory practices or procedures that Defendant Rustin failed to employ or that he should have been aware that an unreasonable risk of harm existed. Thus, Defendant Rustin cannot be found liable based on his supervisory position within the ACJ.

3.      <u>Excessive Force</u>

In Count Four, Plaintiff names Defendants Rustin and Mazzocca and alleges the following. On February 22, 2006, his papers were removed from his cell pursuant to a cell search and thrown on the floor outside his cell. Plaintiff was informed by another inmate that all materials left outside the cells would be discarded in the trash. Defendant Mazzocca came to Plaintiff's cell accompanied by a nurse to deliver his medications. When the food slot was opened, Plaintiff reached his arm outside to get his legal documents. Plaintiff claims that Defendant Mazzocca immediately became enraged and began twisting, kicking, and punching Plaintiff's arm. Plaintiff states that he was taken to the nurses' station for the laceration and contusions he suffered. Plaintiff filed a grievance the next day and appealed to Warden Rustin and the Oversight Board of the County Jail;.no official reply or decision was rendered.

Again, for the same reasons set forth above, Plaintiff has failed to set forth any evidence upon which to hold Defendant Rustin liable for this incident. As to Defendant Mazzocca, as stated earlier, in an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors relevant to this inquiry include: the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. Id. See also Brooks v. Kyler, 204 F.3d 102, 104 (3d Cir. 2000) (holding that there is no fixed minimum quantum of injury that a prisoner must prove he suffered through either objective or independent evidence in order to state a claim for excessive force).

The record shows the following facts. On February 20, 2006, Officer Mazzocca was escorting a nurse who was doing rounds and delivering medication. Miskovitch claims that he stuck his arm out of the food slot when they arrived at his cell in order to get his legal materials, which allegedly were on the floor at the time. Mazzocca claims that Plaintiff assaulted him by throwing a punch, grabbing him and refusing to release him. Mazzocca struggled with Plaintiff to release himself and secure the food slot. Mazzocca then wrote a misconduct against Plaintiff, which provides as follows.

> On the above date and time while passing meds to cell 202, the above mentioned inmate grabbed myself (CO Mazzocca) by the shirt and threw a punch through the food slot striking me (CO Mazzocca) in the groin area. At that time, the amount of force necessary was used to defend myself (CO Mazzocca) and secure the food slot. The innate stated "Im [sic] going to beat your ass!
>
> * request charges be pressed on inmate*

Doc. No. 152-4, p. 4.

Plaintiff claims that he did not strike Mazzocca until he had battered his arm for approximately thirty seconds without provocation and then he defended himself while defending his property (doc. no. 169, p. 9).

The facts of this case are strikingly similar to those set forth in Jones v. Johnson, Civil No. 08-15258, 2009 WL 1313245 (E.D. Mich. May 12, 2009). In that case, the plaintiff, while housed in a segregation unit, placed his arm out of the food slot so as to preclude it being closed. He claimed that he did this to gain the attention of administration so he could make them aware of staff whom were abusing their authority. A corrections officer grabbed his arm and twisted it while digging his finger nails into the plaintiff's arm. At this point, another corrections officer Johnson began slamming the heavy metal food slot door on the plaintiff's arm. At all times during this

assault, the plaintiff was secure in his segregation cell and all others in the segregation unit were locked securely in their cells. In reviewing this claim, the District Court held the force used to accomplish the penological purpose was not unconstitutionally disproportionate and that any injury suffered by the plaintiff was *de minimis* and not of constitutional magnitude.

The same is true with regard to the facts at issue in the case at bar. Defendant Mazzocca's actions were a reasonable response to the threat posed by Plaintiff's actions. *See, e.g.*,Boyd v. Selmer, 842 F. Supp. 52 (N.D.N.Y. 1994) (holding that the force applied by officers in compelling inmate to remove his hand from feed-up flap, which consisted of striking inmate three to four times with their batons, was not excessive under the circumstances); Montenegro v. Cozbey, Civil No. 07-0083, 2009 WL 1422570, 2 (N.D. Tex. May 20, 2009) (same); Hunter v. Orlds, Civil No. 07-0183, 2007 WL 4245777 (N.D. Tex. Dec. 3, 2007) (same notwithstanding plaintiff's contention that he was not a danger to anyone).

Moreover, Plaintiff has not submitted any evidence to show that he suffered any injury as a result of the alleged attack. This Court granted a defendant's motion for summary judgment in similar circumstances in Schaeffer v. Schamp, Civil No. 06-1516, 2008 WL 2553474, 4 (W.D. Pa. June 25, 2008). In that case, the plaintiff claimed that the defendant hit him three times with a baton when he put his arm out of the food slot during medication rounds. In resolving the issue, I stated as follows.

> With respect to the September 25, 2006 incident, Plaintiff claims that Defendant Cyr hit him three times with the baton. However, the undisputed medical evidence does not verify that Plaintiff suffered an objectively serious injury as a result of Defendant Cyr's alleged actions. The medical evidence shows abrasions to the underside of Plaintiff's arm but the record specifically notes "Top of left hand has no redness or swelling. Can move fingers without problem. No other injuries claimed or seen."

"A non-moving party may not rest upon mere allegations, general denials or vague statements." Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (internal quotations omitted). The inquiry is whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. Anderson, 477 U.S. at 252. Plaintiff has failed to show that he suffered any alleged injury that was objectively "harmful enough" to establish a constitutional violation under the Eighth Amendment. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973). The absence of any significant injury supports a conclusion that the force used with respect to the instant action was de minimis. *See* Reyes v. Chinnici, 54 Fed. App'x 44 (3d Cir. 2002) (holding that the degree of a prisoner's injury can be taken into account by a federal district court in granting summary judgment to a corrections officer where the degree of force used was so minor that the court safely could assume that no reasonable person could conclude that the corrections officer acted maliciously and sadistically).

Schaeffer, 2008 WL 2553474, at *4.

Here, there is no evidence that the amount of force used was "excessive" in relationship to the need of force required.

When the ever-present potential for violent confrontation and conflagration ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, . . ., courts must determine whether the evidence goes beyond a mere dispute over the

> reasonableness of a particular use of force or the existence of
> arguably superior alternatives.  Unless it appears that the evidence,
> viewed in the light most favorable to the plaintiff, will support a
> reliable inference of wantonness in the infliction of pain under the
> standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 321-322 (emphasis added) (internal quotations and citations omitted).

Finally, even if the court were to conclude that Plaintiff's allegations set forth a claim of excessive force, Defendant Mazzocca is entitled to qualified immunity.  With respect to the circumstances presented at bar, this Court has not discovered any legal authority demonstrating a clearly established rule prohibiting Defendant Mazzocca from acting as he did in responding to the security risk posed by Plaintiff's admitted behavior in placing his arm outside the food slot, regardless of his supposed purpose in doing so.  In other words, there is no authority that suggests that it was a violation of constitutional law for correctional officers to require an inmate to remove his arm from a food slot when his actions present a security concern.  *See* Jones v. Johnson, Civil No. 08-15258, 2009 WL 1313245 (E.D. Mich. May 12, 2009) (holding defendants entitled to qualified immunity with respect to plaintiff's allegations of hitting and twisting his arm when he placed it outside food slot).  Thus, Defendant Mazzocca is entitled to qualified immunity from Plaintiff's excessive force claims because reasonable officers in his position at the relevant time could have believed that their conduct would have been lawful.

4.     Failure to Protect

In Count Five, Plaintiff asserts liability against Defendant Rustin based on his alleged failure to protect him from injury.  In this Count, Plaintiff alleges that on February 12, 2006, Plaintiff wrote an inmate request slip addressed to "Warden/ McCall/ Leon/Emerick," which provides as follows.

> Although I do not request self lock-up I will tell you this.  Several
> inmates want to either harm me or kill me...  I am OK with a "fair

one" or fair fight. I am not OK with getting stabbed. I request
showers alone. I'll deal with the rest. There are 4, maybe 5 guys that
hate me up here. Hey, you want me in the hole, deal with it.

Doc. No. 169-13, p.1.

On February 14, 2006, while being escorted from the yard, Plaintiff was attacked by another

inmate housed in cell 201. Plaintiff claims that the inmate attacked him from behind, using his

handcuffs to hit him "club-style" in the side of his neck causing a temporary black out (doc. no. 169-

14, p. 1). He claims that he filed a grievance and an appeal to the Defendant Rustin but no reply or

decision was received.

The Eighth Amendment requires prison officials to take reasonable measures to protect

prisoners from violence at the hands of other prisoners. Farmer, 511 U.S. at 834 ("[b]eing violently

assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses

against society.'") (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)). In the context of a

"failure to protect" claim, a plaintiff must demonstrate that: 1) he is incarcerated under conditions

posing a substantial risk of serious harm; and 2) prison officials showed "deliberate indifference"

to such risk. Id., 511 U.S. at 834.

This standard was summed up by the Court of Appeals for the Third Circuit as follows.

> . . . To be liable on a deliberate indifference claim, a defendant
> prison official must both "know[ ] of and disregard[ ] an excessive
> risk to inmate health or safety." Farmer, 511 U.S. at 837. The
> knowledge element of deliberate indifference is subjective, not
> objective knowledge, meaning that the official must actually be
> aware of the existence of the excessive risk; it is not sufficient that
> the official should have been aware. However, subjective knowledge
> on the part of the official can be proved by circumstantial evidence
> to the effect that the excessive risk was so obvious that the official
> must have known of the risk. Finally, a defendant can rebut a prima
> facie demonstration of deliberate indifference either by establishing
> that he did not have the requisite level of knowledge or awareness of

the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring.

Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citations omitted).

Plaintiff has not demonstrated that Defendant Rustin acted with deliberate indifference to his safety. To show deliberate indifference, the prison official need not believe or intend that the inmate will actually be harmed; rather, he is liable if he consciously ignores a known substantial risk to an inmate's safety. Farmer, 511 U.S. at 842. Here, Plaintiff does not identify any inmate who he believed to be a threat against him, he merely states that "several inmates want to either harm me or kill me." Moreover, the only thing he requested was that he be able to shower alone, he specifically states "I'll deal with the rest." Thus, there simply is no record evidence for a factfinder to conclude that Defendant Rustin was aware, or should have been aware, of any intolerable threat to Plaintiff's safety. Consequently, Defendant Rustin is entitled to summary judgement as to Plaintiff's claim of failure to protect.

## F. Fourteenth Amendment

Plaintiff further claims that he has been denied his rights as protected by the Fourteenth Amendment, which provides as follows.

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, §1 (emphasis added).

1.      Claims regarding Handbook and Grievance System

Plaintiff first makes various allegations concerning Defendants' actions and inactions in responding and processing his inmate grievances. In order to state a claim for relief under the Due Process Clause of the Fourteenth Amendment, a plaintiff must set forth facts that demonstrate that he had a "protected liberty interest" that was impaired by the defendants actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972).

It is well established that the due process clause does not, in and of itself, confer upon an inmate a right to pursue grievance proceedings against prison officials. Leavitt v. Allen, 46 F.3d 1114 (Table), 1995 WL 44530 (1st Cir. Feb. 3, 1995). Furthermore, prison regulations which establish a grievance procedure cannot give rise to a liberty interest because they confer only procedural protections, not substantive rights, upon the inmates who may use the grievance procedures. *See* Caldwell v. Beard, 324 Fed. App'x 186, 189 (3d Cir. 2009) (noting that the District Court correctly held that an inmate has no constitutional right to a grievance procedure); Johnson v. Rush, Civil No. 07-4243, 2009 WL 237187, 1 (3d Cir. Feb. 3, 2009) (same).[7] Thus, Defendants are entitled to summary judgment with respect to Plaintiff's allegations concerning Defendants actions with respect to his grievances and providing him an inmate handbook.

2.    Confinement in Restrictive Custody

Plaintiff also claims that he was denied due process with respect to his confinement on restriction status. In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court Supreme Court pronounced a new standard for determining whether prison conditions deprive a

---

7. *See also* Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898 (1988); Veteto v. Miller, 829 F.Supp. 1486, 1493 (M. D. Pa. 1992).

prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added). At issue in Sandin was whether the plaintiff's thirty-day detention in disciplinary custody in a Hawaii prison impacted any protectable liberty interest under the Fourteenth Amendment. The Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In finding that the prisoner's 30-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Supreme Court noted the following three factors: 1) the relatively short duration of the segregation; 2) the similarity between the conditions of confinement in disciplinary segregation and the conditions imposed upon other inmates; and 3) the lack of any direct collateral consequences affecting the length of the prisoner's underlying sentence. Applying this new test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence.

Thus, inmates do not have a liberty interest in avoiding transfer to restrictive custody unless such custody imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Employing the due process analysis announced in Sandin, the federal courts, including the United States Court of Appeals for the Third Circuit,

have concluded that placement in restrictive confinement for periods of up to one year, and more, does not trigger a constitutionally protected liberty interest as it does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. *See* <u>Griffin v. Vaughn</u>, 112 F.3d 703 (3d Cir. 1997) (it is not atypical to be exposed to conditions of administrative custody for periods as long as 15 months as such stays are within the expected parameters of an inmate's sentence).

The conditions complained of by Plaintiff in restrictive custody are reasonable and proportionate to those in other prisons in the Commonwealth and across the country and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Using restrictions to promote social behavior falls within the parameters of a sentence imposed by a court of law. While Plaintiff clearly would prefer not to be housed in restrictive housing, his preference is not a liberty interest protected by the Due Process Clause. Nor is it so simply because he complains of its indefinite nature. *See* <u>Shoats v. Horn</u>, 213 F.3d 140 (3d Cir.2000)( state prisoner in long-term administrative segregation received due process where he received periodic review of his status every 30 days). Here, Plaintiff's status in restrictive custody was reviewed every thirty days. Thus, he can not claim a violation of his procedural due process rights with respect to his confinement in restrictive confinement. Consequently, Defendants are entitled to summary judgment as to this claim.

3.    <u>Denial of Property</u>

Plaintiff also alleges that Defendants' actions in throwing away his property violated his rights as protected by the Due Process Clause of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment prohibits the state from depriving an individual of life, liberty

37

or property without due process of law. Ordinarily, the concept of "due process" requires some kind of hearing <u>before</u> the state can deprive a person of a protected interest. <u>Zinermon v. Burch</u>, 494 U.S. 113, 126 (1990) (collecting cases). However, in cases of random and unauthorized deprivations of property the State cannot predict when the loss will occur and, therefore, is unable to provide a meaningful hearing before the deprivation takes place. Thus, in <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), the Supreme Court determined that, with respect to negligent, random and unauthorized acts by state actors that result in the loss of a protected interest, a plaintiff does not suffer a violation of procedural due process if he or she has an adequate post-deprivation remedy. In <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), the Supreme Court extended the rule in <u>Parratt</u> to apply to intentional acts by state actors.

To the extent that he is alleging a procedural due process claim with respect to the intentional destruction of his property, Plaintiff's allegations fail to state a claim upon which relief may be granted because he had an adequate post-deprivation remedy available to protect his due process rights through the ACJ administrative grievance procedures and through a tort action in state court. *See* <u>Payton v. Horn</u>, 49 F. Supp.2d 791, 795 (E.D. Pa. 1999) (holding that Pennsylvania tort law offered a remedy for prison official's unlawful deprivation of an inmate's property and therefore inmate failed to state a claim that his constitutional rights were violated), *overruled on other grounds*, <u>Ray v. Kertes</u>, 285 F.3d 287 (3d Cir. 2002); <u>Reid v. Seville</u>, No. CIV. A. 96-2577, 1996 WL 421901, *3 (E.D.Pa. July 19, 1996) (same); <u>Austin v. Lehman</u>, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies); <u>Rogers v. Mrs. Brown</u>, Civil No. 95-7867, 1996 WL 608473, *2 (E.D. Pa. Oct. 24, 1996) (holding that both the DOC grievance procedure and tort suit in state court provide

adequate post deprivation remedies). Hence, assuming Plaintiff had a protected property interest in the items taken, given that Plaintiff had access to state post-deprivation remedies, he cannot make out a claim that he was denied procedural due process.

## III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Plaintiff's Motion for Summary Judgment (doc. no. 121) and Cross Motion for Summary Judgment (doc. no. 169) be denied and that the Motion for Summary Judgement (doc. no. 152) and Cross Motion for Summary Judgment (doc. no. 223) filed by Defendants Rustin, Leon, Donis, Reese, Worrall, Mazzocca, and the Allegheny County Jail be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of issuance of this Order to file an appeal to the District Judge, which includes the basis for objection to this Order. Any party opposing the appeal shall have fourteen (14) days from the date of service of the notice of appeal to respond thereto. Failure to file a timely notice of appeal may constitute a waiver of any appellate rights.

Dated: May 19, 2010

Lisa Pupo Lenihan
United States Magistrate Judge

cc:     Eric M. Miskovitch
        49844
        Allegheny County Jail
        950 2nd Ave.
        Pittsburgh, PA 15219