IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC M. MISKOVITCH, | ) |
| | ) |
| Plaintiff, | ) Case No. 06-1410 |
| | ) |
| v. | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| LT. HOSTOFFER, et al., | ) |
| | ) |
| Defendants | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 alleging, *inter alia*, violations of his rights against Dr. Lazlo Petras, a physician who provided medical services to persons confined at the Mayview State Hospital and Dr. Rodriguez, a physician who provided medical services to inmates at the Allegheny County Jail during the relevant time period, when they involuntarily injected him with psycho tropic medication without justification. In response to the Motion for Summary Judgement filed by Dr. Petras (doc. no. 218), on May 28, 2010, this Court filed a lengthy Report and Recommendation that set forth the pertinent law governing Plaintiff's claims and recommended that the motion for summary judgment filed by Dr. Petras be denied (ECF no. 232). The District Court adopted the Report and Recommendation as the Opinion of the Court (ECF No. 241).

On July 15, 2011, the parties agreed to proceed before a United States Magistrate Judge and the case was reassigned to myself. On September 24, 2010, the Court directed that counsel be appointed for Plaintiff and on January 12, 2011, Keith E. Whitson, Esquire, accepted this request (ECF No. 285). On April 5, 2011, Dr. Rodriguez filed a Motion for Summary Judgment (ECF No. 296). For substantially the same reasons set forth in this Court's Report and

Recommendation dated May 28, 2010 (ECF No. 232), which sets forth the law of the case in great detail, the Motion for Summary Judgment filed by Dr. Rodriguez (ECF No. 296) will be denied.

### A. Standard of Review

Pursuant to Fed. R. Civ. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. Whiteland Woods, L.P. v. Township of West Whiteland, 193 F.3d 177, 180 (3d Cir. 1999), Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir.1987).

### B. Plaintiff's Allegations

Plaintiff, Eric Miskovitch, a citizen of the Commonwealth of Pennsylvania, currently is an inmate at the State Correctional Institution at Camp Hill, Pennsylvania. His allegations concern actions that occurred while he was confined in the Allegheny County Jail (ACJ). Specifically, while he was incarcerated at the ACJ, Plaintiff was housed in Unit 8E, which is a restricted housing unit (RHU), also known as the hole. On or around July 13, 2006, Miskovitch was transferred from the RHU to the mental health unit (MHU) at ACJ. This transfer occurred after Miskovitch overheard an ACJ guard assaulting another inmate in a nearby cell. In an effort to

obtain medical care for the assaulted inmate, Miskovitch began causing a commotion and repeatedly called for assistance. When no one came to help, Miskovitch stated that he was going to break the sprinkler in his cell in an effort to "bring someone to the unit" who would render medical assistance to the inmate. As a result of breaking the sprinkler, Miskovitch was placed in restraints and moved into the MHU for observation.

Subsequently, on July 14, 2006, Dr. Rodriguez visited Miskovitch and asked him if he was prepared to leave the mental health unit and return to the hole. Miskovitch replied that he was not ready to do so and that if Dr. Rodriguez sent him to the Hole, he would commit suicide. At that time, Dr. Rodriguez ordered that Miskovitch be stripped of his clothing and placed in five-point restraints. Additionally, Dr. Rodriguez ordered that Miskovitch be injected with Thorazine to calm Miskovitch despite the fact that he was no longer a threat once he was placed in the five-point restraints. Pursuant to Dr. Rodriguez'S order, Miskovitch was placed in five point restraints at approximately 7:45 a.m. on July 14, 2006. Subsequently, the restraints were reduced to four-point restraints, then three-point restraints. On or about 1:30 p.m. on July 15, 2006, Plaintiff was finally released from the restraints.

Dr. Rodriguez admits that there is no evidence that anyone asked Miskovitch to take Thorazine voluntarily. Dr. Rodriguez never consulted the ACJ's administrative procedures before determining whether forcible injection was necessary. Dr. Rodriguez admits that he did not contact the chief medical officer, Dr. Patterson, or any other medical personnel about forcibly treating Miskovitch with Thorazine. Dr. Rodriguez also stated that he did not believe that Miskovitch was given a hearing in advance of his forcible injection.

## C. Law of the Case

As stated above, the Report and Recommendation dated May 28, 2010 sets forth the law governing the determination of Dr. Rodriguez' motion at great length and was decided well before he filed his current motion for summary judgment. As discussed at length in this Court's earlier opinion, well over twenty years ago, both the United States Supreme Court and the Court of Appeals for the Third Circuit have held that prisoners have a constitutional right to refuse treatment, including antipsychotic drugs. This law makes clear that, before an institution may forcibly inject an individual with antipsychotic medicines, that institution must take certain steps to ensure that the individual's due process rights are not violated. To that end, the institution must provide the patient with procedural and substantive safeguards - consistent with the Due Process clause.

It is clear that Dr. Rodriguez did not employ any safeguards before having Miskovitch forcibly injected with Thorazine. In fact, nowhere has Dr. Rodriguez stated that he followed any procedure whatsoever. Dr. Rodriguez admits that there is no evidence that anyone asked Miskovitch to take the Thorazine voluntarily. Dr. Rodriguez also admits that he did not contact the chief medical officer, Dr. Patterson, prior to having Miskovitch injected with Thorazine. Further, Dr. Rodriguez stated that he did not believe that Miskovitch was given a hearing in advance of his forcible injection. In fact, he does not recall if anyone was present with him prior to his ordering restraints and Thorazine for Miskovitch.

Moreover, while courts have determined that an imminent emergency may justify waiving of an institutionalized person's due process rights and permit the forcible injection of anti-psychotic medicines, the facts at bar cannot establish the existence of an emergency that

justified the forcible injection of Miskovitch with Thorazine. In this regard, The ACJ's forced medication policy provides that:

> [u]se of involuntary psychotropic medication with inmates will belimited to the following circumstances: An immediate threat to others is present; less restrictive measures have been ineffective; severity of the individual's -- the individual case indicates less restrictive measures will not likely be effective.

No steps were taken to ascertain whether Miskovitch's condition constituted an emergency that justified waiving the applicable due process protections and forcibly injecting him with Thorazine. Further, any emergency situation that had occurred had been abated by the use of five-point restraints as ordered by Dr. Rodriguez. Nonetheless, Dr. Rodriguez ordered the Thorazine injection after Miskovitch had already been restrainted.

Given that he was restrained, Dr Rodriguez admitted that he "cannot imagine" that Miskovitch was a threat to him at the time he ordered him to be forcibly injected with Thorazine. Nor could he have been a threat to himself, either. These facts make it clear that, per the ACJ's own policy, "less restrictive" means of restraint had been effective in controlling Miskovitch and forced injection of Miskovitch with Thorazine was unnecessary.

Dr. Rodriguez's reasons for forcibly injecting Miskovitch with Thorazine do not meet the standards set forth in the ACJ's own written policy or the due process standards enunciated by the United States Supreme Court and the Third Circuit. Accordingly, Dr. Rodriguez is not entitled to summary judgment as to Plaintiff's due process claims. An appropriate order follows.

# **ORDER**

**AND NOW**, this 18th day of August, 2011;

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Dr. Rodriguez (ECF No. 296) is **DENIED**.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: all counsel of record